IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3064-FL

| | |
|---|---|
| ERIC CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DR. EURGIA LAND,[1] ) | |
| ) | |
| Defendant. ) | |

The matter comes before the court on the motion for summary judgment (DE 39) pursuant to Federal Rule of Civil Procedure 56 of defendant Eurgia Land ("Land"), to which plaintiff responded. In this posture, the matter is ripe for adjudication. For the following reasons, the court grants Land's motion.

## STATEMENT OF THE CASE

The court has extensively detailed the procedural posture of this action in prior orders. For ease of reference, a pertinent portion of the statement of the case set forth in the court's July 3, 2012, order, is restated here:

> On May 5, 2010, plaintiff filed this action pursuant to 42 U.S.C. § 1983. Plaintiff alleged that Land as well as [now-dismissed] defendants Alvin W. Keller ("Keller") and Grady Massey ("Massey") acted with both negligence and deliberate indifference to his lung condition in violation of the Eighth Amendment to the United States

---

[1] Plaintiff referred to this defendant as Dr. Eric Land. This defendant, however, notified the court that his name is Dr. Eurgia C. Land. The court hereinafter will refer to this defendant by that name.

Constitution. As relief, plaintiff requested both monetary damages and injunctive relief.

On January 26, 2011, Land filed a motion to dismiss plaintiff's action, arguing that plaintiff failed to obtain service of the summons and complaint upon him in accordance with Federal Rule of Civil Procedure 4. Alternatively, Land argued that plaintiff failed to state a claim for injunctive relief and that his negligence claim should be dismissed for failure to comply with North Carolina Rule of Civil Procedure 9(j). On February 14, 2011, Keller and Massey filed a motion to dismiss plaintiff's complaint, arguing that plaintiff failed to state a claim upon which relief may be granted. On August 18, 2011, the court entered an order granting in part and denying in part Land's motion to dismiss. Land's motion was granted as to plaintiff's negligence claim and request for injunctive relief, but denied as to the remainder of his motion. The court also granted the motion to dismiss filed by Keller and Massey.

On September 1, 2011, the court issued its initial order regarding planning and scheduling. In response, Land objected to the court's order, and requested a stay of discovery until after the court adjudicated his qualified immunity defense. The court, in response, issued an order noting that Land had not filed any motion presenting substantive argument as to why the case should be dismissed pursuant to the defense of qualified immunity. Accordingly, the court held Land's objection in abeyance for thirty (30) days to allow him the opportunity to raise the defense of qualified immunity through the appropriate motion.

On December 19, 2011, Land filed a second motion to dismiss arguing that plaintiff failed to state a claim upon which relief may be granted. Alternatively, Land raises the defense of qualified immunity. Plaintiff responded to Land's motion.

On July 3, 2012, the court entered an order denying Land's second motion to dismiss.

On December 14, 2012, Land filed a motion for summary judgment, arguing that plaintiff failed to establish a constitutional violation. Alternatively, Land asserts the affirmative defense of qualified immunity. In response, plaintiff submitted documents purportedly in response to Land's motion.

2

## STATEMENT OF FACTS

Viewing the facts in the light most favorable to plaintiff, the facts are as follows. Plaintiff was convicted of felony robbery on July 9, 2008. Land Aff. ¶ 7. On September 17, 2008, prior to his incarceration, plaintiff had a computed tomography ("CT") scan of his chest at Moore Regional Hospital ("Moore"). Id. ¶ 6 and Ex. 3. The CT scan was ordered as a follow-up on an abnormal CT scan taken in 2006. Id. The purpose of the follow-up CT scan was to determine whether plaintiff's lung condition made him a candidate for a bullectomy (surgical removal of bulla). Id. Subsequent to the 2008 CT scan, Dr. John F. Krahnert, Jr. ("Dr. Krahnert") noted a large bulla in plaintiff's right lung, which had not changed since the last CT scan. Id. Due to the lack of "significant documentation of major pulmonary compromise," as well as the fact that a bullectomy was not recommended as prophylaxes for a pneumothorax, Dr. Krahnert did not recommend surgery. Id. Dr. Krahnert informed plaintiff that plaintiff's smoking increased his risk for further problems, and recommended that plaintiff stop smoking. Id.

On September 22, 2008, plaintiff underwent a bronchoscopy, with a cytology and a lung biopsy. Id. The cytology report revealed no malignancy and reflected that the bronchial epithelial cells were benign. Id. The lung biopsy revealed no diagnostic abnormalities, granulomas (cells that attempt to wall off substances they perceive as foreign but are unable to eliminate), or carcinoma (cancer) were present. Id.

On November 14, 2008, plaintiff entered the custody of the North Carolina Department of Public Safety ("DPS") to begin serving his sentence. Id. ¶ 7. Land began treating plaintiff when plaintiff was transferred to Greene Correctional Institution ("Greene") on December 9, 2008. Id.

3

Upon plaintiff's transfer to Greene, Land reviewed plaintiff's medical chart which reflected that Dr. Krahnert provided pre-incarceration treatment for plaintiff's lung condition. Id. ¶ 12 and Ex. 7. On June 29, 2009, Land examined plaintiff in relation to his lung condition. Id. During his examination, Land noted that plaintiff had a history of chronic cigarette smoking, but that plaintiff had recently quit. Id. Land did not observe any cyanosis or clubbing of the fingers, which can be a symptom of lung disease. Id. Land assessed plaintiff with probable chronic obstructive pulmonary disease ("COPD"). Id. Land also ordered a chest electromagnetic radiation ("x-ray") test and a complete blood count ("CBC") to further evaluate and monitor the progression of plaintiff's bullous emphysema and to confirm COPD. Id. Finally, Land scheduled a six month follow-up appointment so that he could monitor plaintiff's bulla. Id.

On July 7, 2009, plaintiff had his chest x-ray. Id. ¶ 13. The radiology report suggested that plaintiff's old x-ray films be obtained for comparison. Id. and Ex. 7. The radiology report further stated that, if the old films were not available, a CT scan may be beneficial to diagnose and assess the extent of plaintiff's medical condition. Id. Land then rescheduled plaintiff's six-month follow-up appointment for three months so that a serial x-ray could be obtained to monitor his condition and to determine if a CT scan needed to be ordered. Id.

Land saw plaintiff for his three month follow-up appointment on October 8, 2009. Id. ¶ 14. Plaintiff presented as asymptomatic. Id. and Ex. 8. Land reviewed the findings of plaintiff's old chest x-ray reports from 2007 and 2008, which showed stable bullae and old hematomas in the lungs. Id. Land's comparison revealed that plaintiff's bulla had decreased significantly in size and had stabilized, which significantly reduced the risk that plaintiff would experience pneumothorax. Id. Land assessed plaintiff with COPD and gastroesophageal reflux disease ("GERD"). Id. Finally,

4

Land instructed plaintiff to return to the clinic in four months so that he could monitor his COPD and GERD. Id.

On March 7, 2010, plaintiff submitted a sick call appointment request stating that he had been experiencing pain in his right lung where his bulla was located. Id. ¶ 16 and Ex. 10. Plaintiff was seen by a nurse the next day. Id. Upon examination, the nurse noted that plaintiff complained of pain in his right upper chest that increased with exercise and that he reported coughing up "brownish" phlegm. Id. The nurse assessed plaintiff with "risk for respiratory distress" and placed plaintiff on the list to see a physician. Id. The nurse instructed plaintiff to return to the clinic if respiratory difficulties occurred and to report immediately to the sergeant for any respiratory-related concerns. Id.

Land examined plaintiff on March 23, 2010, and noted mild right upper chest wall tenderness. Id. ¶ 17 and Ex. 11. Land determined that because plaintiff's chest was tender to the touch, his complaints of chest pain did not appear to be associated with his bulla. Id. Land assessed plaintiff with a stable right lung mass and prescribed Tylenol for his chest pain. Id.

On May 5, 2010, plaintiff filed this § 1983 action, and made the following allegations:

> I have a large bulla in my right lung that poses a risk for spontaneous pneumothorax. Without a continual observation of my right lung, to see, and determine if and when a surgical intervention will save my life before emphysema set in the bulla and could cause my lung to collapse and could cause loss of life upon my person. [Land] is the only Dr. currently treating me for minor health problems, and each time I request access to outside care and treatment for this lung condition I am denied by [Land.] . . . All of the named defendants have put my life at risk, through their denial of adequate medical care and treatment through access to First Health of N.C. Chest Center and

5

> the care of a professional, Dr. John F. Krahnert to determine when I
> may need surgery.

Compl. pp. 3-4.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Land raises the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two-pronged qualified immunity inquiry:

6

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two-prong test to analyze first. Pearson, 555 U.S. at 242.

In this case, the court first determines whether Land acted with deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious'"–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" See Strickler, 989 F.2d at 1379 (quotations omitted).

Land asserts that plaintiff's allegations do not satisfy the second prong of the Eighth Amendment test–whether defendants acted with deliberate indifference to plaintiff's serious medical

7

needs.[2] "Deliberate indifference entails something more than mere negligence, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that an official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

In support of his Eighth Amendment claim, plaintiff contends that Land interfered with the lung treatment plaintiff was receiving from Dr. Krahnert at the Chest Center of the Carolinas. In particular, plaintiff states that Land did not permit plaintiff to attend a follow-up appointment with Dr. Krahnert in June 2009. The record, however, reflects that plaintiff was seeing Dr. Krahnert for his lung condition prior to incarceration, and that plaintiff's June 2009 appointment was scheduled by plaintiff prior to incarceration. Land Aff. ¶ 12, n. 5. Subsequent to plaintiff's incarceration, Land took over the duty of monitoring plaintiff's lung condition and did not make any referrals for outside care.

To the extent plaintiff alleges that Land acted with deliberate indifference in the course of monitoring plaintiff's lung condition, plaintiff's medical records belie this assertion. In particular, the record reflects that from December 19, 2008, through March 23, 2010, plaintiff was examined

---

[2] The court assumes, without deciding, that plaintiff is able to satisfy the objective prong of the Eighth Amendment test.

8

Case 5:10-ct-03064-FL Document 44 Filed 04/18/13 Page 8 of 9

by Land on five occasions and that Land ordered diagnostic testing, including x-rays. Land Aff. ¶ 19. The record also reflects that Land was responsive to plaintiff's sick call requests. Additionally, the record reflects that plaintiff was not recommended for surgery prior to his incarceration, and that his bulla remained stable through the filing of this lawsuit. Accordingly, the record reflects that Land provided continual care for plaintiff's various complaints, and was responsive to plaintiff's medical needs.

Based upon the foregoing plaintiff's dissatisfaction with Land's monitoring of his condition and/or his requests to see specialists or for surgical intervention, at most, amounts to nothing more than a disagreement over the proper course of treatment. See e.g., Russell, 528 F.2d at 319. It is well settled that such a disagreement does not constitute an Eighth Amendment claim. See Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). Therefore, because plaintiff has not established the subjective element of his Eighth Amendment deliberate indifference claim, there is no constitutional violation. Based upon the foregoing, Land is entitled to qualified immunity for plaintiff's claim, and his motion for summary judgment is GRANTED.

## CONCLUSION

Based upon the foregoing, Land's motion for summary judgment (DE 39) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 17th day of April, 2013.

LOUISE W. FLANAGAN
United States District Judge

9